1131

Ben POLIS, Respondent v. Gussie T. POLIS, Appellant.
(367 S. E. (2d) 465)

Court of Appeals

*Edward D. Buckley, Sr.,* and *Edward D. Buckley, Jr.,* Charleston, *for appellant.*

*Ann M. Stirling,* Charleston, *for respondent.*

Decided April 4, 1988.

*Per Curiam:*

The appealed order, *inter alia*, (1) granted the husband a divorce on the grounds of one year's separation, (2) identified, valued and divided the marital assets between the parties and (3) denied the wife alimony but allowed her to seek it in the future in the event that certain monthly payments awarded to her in the equitable distribution cease. The wife presented several exceptions to the order; those of merit concern the family court's determination that she was entitled to only 41 percent of the marital estate and the family court's identification, valuation and division of the marital assets. We reverse and remand the family court's identification, valuation and division scheme of the marital assets and the percentages awarded to the parties.

In appeals from the family court, this court has jurisdiction to find the facts according to its own view of the evidence. *Mitchell v. Mitchell*, 283 S. C. 87, 320 S. E. (2d) 706 (1984).

### 1. Percentages

The parties married in 1937 and separated in 1978. They have two children, both of whom are emancipated. Neither party brought assets of significant value into the marriage. During the marriage, the wife worked various jobs and contributed her earnings to the family. Most notably, she gave to the husband the money she received from the sale of a business of which she was part owner. The husband used this money to start a business of his own which failed. In addition, the wife testified she assisted the husband in two other business ventures, neither of which survived. In one of these ventures, she worked without pay. The record also reflects that the wife provided homemaker services and raised the parties' two children. The wife further testified that on one occasion the husband used funds she had received in settlement of an accident claim to purchase a second mortgage and, without her knowledge, assigned the mortgage to satisfy a debt. The family court also found that the husband drank heavily throughout the marriage and had committed adultery since the separation; only the former was found to have contributed to the dissolution of the marriage.

In terms of value, the bulk of the marital estate as deter-

mined by the family court consisted of five pieces of real property, three of which had been sold before the hearing. At least three of the five properties increased dramatically in value since their acquisitions as evident from comparing their purchase prices with their final selling prices, current appraisals, or obligations secured. The record indicates that these increases in value—and thus the parties' accumulation of wealth—resulted primarily from favorable trends in the Charleston real estate market.

The family court divided the marital estate 59-41 percent in the husband's favor on the basis of its assessment of the parties' contributions during the course of the marriage. As to the contributions, the family court stated that the husband "earned the vast majority of the finances during the course of the marriage[,] which supported the family and made the educating of their children possible."

While the family court recognized that the wife contributed her earnings, homemaker services and "moral support" to the family, the court appeared to emphasize the husband's financial input at her expense. We hold the family court's failure to consider fully the wife's above-noted contributions was error, especially when perceived against the 41-year duration of the marriage and the fact that the parties' accumulation of wealth resulted mainly from their real estate investments rather than active efforts by the husband. We therefore remand the issue of the percentages in the equitable distribution such that the parties' contributions are re-evaluated according to the mandate of the Equitable Distribution of Marital Property Act, in particular Section 20-7-472(3), Code of Laws of South Carolina (Cum. Supp. 1987).

We likewise hold that the preponderance of the evidence indicates that greater emphasis should have been placed on the wife's financial contributions. As the facts recounted above indicate, the husband used significant sums of money belonging to the wife for various business ventures, none of which proved to be valuable as compared with the parties' real property. Nevertheless, although the parties' present accumulation of wealth did not result from these financial contributions by the wife, these contributions were nevertheless significant sacrifices on her part inuring primarily to the husband's benefit.

## 2. Identification

The family court identified the marital assets as five pieces of real property or their corresponding sales proceeds, personalty valued at $5,000 in possession of the wife, and $5,000 of the wife's savings accounts. The wife contends the family court erred in omitting from the marital estate a business known as World Transmissions, the down payment from a sale of one of the marital properties, located at 119 Ashley Avenue, and personal property in the husband's possession valued by the husband on his financial declaration at $10,000. She also submits that her car, which was included in the marital estate, was a gift from her son.

The husband acquired World Transmissions after the separation but before this action was commenced. One week before the hearing the husband entered into an agreement to sell it for $60,000, but had not collected the money as of the time of the hearing. He testified that the liabilities of the business exceeded its assets; however, the wife argues the proper value is $60,000. The husband established encumbrances concerning World Transmissions totalling only $31,099.80. Under the Equitable Apportionment of Marital Property Act, World Transmissions should have been included in the marital estate. Section 20-7-473, Code of Laws of South Carolina (Cum. Supp. 1987).

The down payment of Ashley Avenue property was divided equally between escrow accounts of the parties' attorneys. The funds held for the husband were misappropriated by his then attorney, and the husband later recovered about half the amount lost from the client security fund. Although the wife notes that the down payment was omitted from the marital estate, she does not suggest that this omission was prejudicial to her.

The husband concedes that the family court should have included his personal property in the marital estate, but maintains that the testimony shows it is worth only $500. He also states the personal property in the wife's possession is worth $1,000 rather than the $5,000 attributed to her by the family court. Furthermore, as noted above, the wife challenges the inclusion of her car in the marital estate, maintaining that it was a gift from her son; this assertion is supported by her testimony and not contra-

dicted otherwise. Because of conflicts in the testimony and data, we remand the identification and evaluation of the parties' personal property for compliance with Family Court Rule 27(C) and advise a clear documentation of the assessments of personalty attributed to each of the parties.

### 3. Valuation and Division Scheme

The family court divided the real properties or their sales proceeds as follows:

|  | Wife | Husband |
|---|---|---|
| 148 Broad Street (former marital residence, in wife's possession) | $105,000 | |
| 158-160 King Street (sold in 1984 with owner financing) | | $220,000 balloon payment in 1994 |
| 119 Ashley Avenue (sold in 1984) | $70,000 balloon payment in 1994 | |
| 136 Queen Street (sold in 1986) | $12,500 | $46,500 |
| 44 Pitt Street (husband's residence after the separation) | | $14,500 |

The family court also awarded the wife all the monthly payments on the Ashley Avenue property and half the monthly payments on the King Street property in lieu of alimony and granted her the right to seek alimony in the future if either payment should cease. The wife noted that these payments were not included in the marital estate, but did not assign error to the omission.

Several problems necessitate a remand of the valuations and division scheme. First, the appealed order failed to reduce the balloon payments and the sales proceeds from the Queen Street property to their present values as of the time of the commencement of this action, i.e., September 5, 1985. Second, concerning the King Street property, the family court failed to give adequate protection to the wife in that the note is without recourse. We also reject the husband's additional sustaining ground that the wife had no interest in the Pitt Street property. The record shows not only that the property was acquired before commencement of this action but also that the husband received title to it for only nomi-

nal consideration from a business owned by both parties.

The wife also notes that the proceeds from the sale of 136 Queen Street, which was titled in both parties' names, were undervalued by $196.03. She also proposes that the proceeds be equally divided, but does not allege error in the failure to do this. Although the alleged undervaluation is relatively minor, the remand of the equitable division should allow for a determination of the exact value of the sales proceeds from the Queen Street property.

For the foregoing reasons, the appealed order is remanded for proceedings consistent with this opinion.

Reversed and remanded.